Argued May 13, 1969, accused reprimanded November 12, 1970

IN RE COMPLAINT AS TO CONDUCT OF
ERNEST LUNDEEN, *Accused.*

476 P2d 180

*William R. Thomas*, Lebanon, argued the cause for petitioner. On the briefs were Morley, Thomas, Orona & Kingsley.

*Robert J. McCrea* and *Thomas E. Brownhill*, Eugene, argued the cause and filed a brief for Oregon State Bar.

Before PERRY,* Chief Justice, and McALLISTER,

* Perry, C.J., retired June 1, 1970.

SLOAN,** O'CONNELL, GOODWIN,*** and DENECKE, Justices.

PER CURIAM.

This is a petition for the review of the decision of the Board of Governors which found accused guilty of certain unethical practices and recommended suspension from practice for a period of two years.

■ The most serious charge is that contained in count six of the Bar's complaint. In this count the accused is charged with "encouraging the commencement and continuance of a suit and proceedings for motives of passion and personal interest."

The Bar attempted to prove that the accused was having adulterous relations with his secretary; that shortly after she began working for him she filed a suit for divorce, the accused acting as her attorney; that thereafter the accused, as attorney for a Mrs. Edwards, the former wife of his secretary's husband, worked with considerable zeal in his efforts to enforce a support decree against the former husband. The substance of this charge against the accused is that his actions in representing Mrs. Edwards were motivated by his passion and personal interest in his secretary.

We have carefully examined the transcript relating to this charge and have concluded that the evidence will not sustain it. There was sufficient evidence to support the Board's conclusion that the accused was engaged in an illicit relationship with his secretary. However, we find no substantial basis for the conclusion that the accused was instrumental in influencing

** Sloan, J., resigned September 30, 1970.
*** Goodwin, J., resigned December 19, 1969.

Mrs. Edwards to institute proceedings against her former husband or that his pursuit of Mrs. Edwards' claim was motivated by his interest in his secretary.

The acused is also charged with having obtained from Wayne Foote, his client in a divorce case, $100 upon the representation that the money would be used to employ a detective to investigate the other spouse's activities, and that the money was not so used but was appropriated to the accused's own use.

This charge was based upon the testimony of Wayne Foote's brother and other relatives. In a supplemental proceeding held after the Board's original decision was handed down, Wayne Foote, who had not appeared in the original disciplinary proceedings, testified that the accused had not represented that the $100 requested would be used to employ an investigator. On the basis of this testimony, the trial committee reversed its original finding of guilty on this count. The Board, however, affirmed its original finding of guilty.

We feel that the testimony of Wayne Foote, supporting accused's interpretation of the arrangement, should be given great weight. There was also other evidence supporting the position taken by the accused. It is our opinion that the evidence will not sustain this count.

■ In another count the accused is charged with commingling with his personal funds and converting to his own use the sum of $61.80 with knowledge "that the said sum of $61.80 had been garnished." The circumstances giving rise to this charge were as follows:

The Coastal Adjustment Bureau garnished the wages of R. Bruce Martin, who was employed by the Abar TV Cable Company. Abar's bookkeeper made out

two checks payable to Martin, one for the garnished amount of $61.80 and one for the balance of Martin's wages. The bookkeeper gave Martin the checks and the writ of garnishment, instructing Martin to take the checks and the writ to the sheriff's office. Martin, who was about to file a petition for voluntary bankruptcy, testified that he took the $61.80 check and the writ to the office of accused and asked him what he should do with them. The accused said, "I will take care of the matter." The accused endorsed the check, "Pay to the Account of Kathleen Lundeen," and it was deposited to an account which the accused described as a "business acount," and that it was his practice to have his wife sign the checks on this account. This explanation strains credulity.

If Martin's testimony is accepted as true, it would appear that the accused, knowing that the check for $61.80 represented garnished funds, nevertheless deposited the check to his personal account with the intent to appropriate it to his own use. However, subsequent events make it doubtful whether the check was deposited with the intention of appropriating it.

Mr. Earl of the Coastal Adjustment Bureau testified that the accused called him on the telephone on May 14, 1962 (which was four days after accused had received the check) informing Earl that accused had the check and that it would be given to the bankruptcy court. As we have noted, the check was deposited to the accused's account and was not delivered to the bankruptcy court. However, the accused filed in the bankruptcy a receipt showing that he had received $61.80 from Martin.

It appears to us that if the accused had intended to appropriate the check, he would not have

called Earl informing him that it was in the accused's possession. It is possible, of course, that the telephone call was motivated by information coming to the accused that Earl had learned of Martin's failure to deliver the check as directed by Abar's bookkeeper.

The trial committee indicated that it did not regard the accused's version of the transaction as credible, but found the accused not guilty for the following reason:

"The committee feels that the count is stale and the defendant might not have had a fair opportunity to defend himself because of the lapse of time and the obvious difficulty of all the witnesses, including the accused, in recalling what transpired."

We share the trial committee's concern on this score and although the evidence tends to point in the direction of accused's intent to appropriate the check, his disclosure to Mr. Earl leaves us in doubt on this point. Having this doubt, we do not feel justified in suspending accused on this count. Accused is, however, subject to reprimand for mingling in his own personal account money belonging to others.

It is our conclusion that the evidence is not sufficient to justify the suspension of the accused. In lieu of suspension the accused is hereby publicly reprimanded for his conduct.